UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WASHINGTON PEARSON, <br><br> Petitioner, <br><br> v. <br><br> SEAN MEDEIROS, <br> Superintendent of MCI-Norfolk, <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION <br> NO. 17-10124-WGY |

YOUNG, D.J.                                        June 21, 2017

**MEMORANDUM & ORDER**

I.  **INTRODUCTION**

    Washington Pearson ("Pearson") is serving two state prison sentences concurrently: one for breaking and entering and another for larceny over $250. He has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. section 2254, arguing that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim because the Massachusetts Appeals Court ("Appeals Court") failed to analyze a police officer's subjective intent under the independent source doctrine. Pet. 28 U.S.C. § 2254 Writ Habeas Corpus ("Pet."), ECF No. 1. Sean Medeiros ("Medeiros"), the superintendent of MCI-Norfolk, opposes the petition in its entirety, arguing that

Pearson's claim was indeed subject to a full and fair litigation in state court, including an evidentiary hearing before trial and a full appeal. Mem. Law Supp. Mot. Dismiss. ("Resp't's Mem.") 4-7, ECF No. 18. For the reasons discussed below, this Court GRANTS Medeiros's motion to dismiss.

### A. Procedural History

On April 4, 2014, in the Massachusetts Superior Court sitting in and for the County of Norfolk, a jury convicted Pearson of four counts of breaking and entering with the intent to commit a felony during the daytime in violation of Massachusetts General Laws, chapter 266, section 18, and four counts of larceny over $250 in violation of Massachusetts General Laws, chapter 266, section 30(1). Commonwealth v. Pearson, 90 Mass. App. Ct. 289, 290 (2016). Pearson was sentenced to concurrent state prison terms of six to eight years for breaking and entering, and four and a half to five years for larceny. Mem. Law Supp. Pet. Writ Habeas Corpus, Ex. 20, Apr. 9, 2016 Sentencing Tr. 25-26, ECF No. 3-20.

Pearson appealed on the ground that "the trial court denied his motion to suppress based on a flawed application of the independent source doctrine." Mem. Law Supp. Pet. Writ Habeas Corpus ("Pet'r's Mem.") 5, ECF No. 3. On September 20, 2016, the Appeals Court affirmed the trial court's decision. Pearson, 90 Mass. App. Ct. at 294. Pearson's application for leave to

obtain further appellate review in the Massachusetts Supreme Judicial Court was denied on November 30, 2016. Commonwealth v. Pearson, 476 Mass. 1105 (2016).

On January 25, 2017, Pearson filed a petition for writ of habeas corpus in this Court under 28 U.S.C. section 2254. Pet.; Pet'r's Mem. Medeiros moved to dismiss. Resp't Medeiros's Mot. Dismiss, ECF No. 17; Resp't's Mem.

B. **Factual Background**[1]

From January 31, 2012 through February 8, 2012, the Brookline police responded to five reports of residential breaking and entering. Pearson, 90 Mass. App. Ct. at 290. Victims reported valuables missing, including jewelry and credit cards. Id. One victim reported that his stolen credit card had been fraudulently used at a number of local retailers. Id. Surveillance footage from three of these stores showed a Hispanic female in her mid-to-late thirties using the card; footage from the fourth store depicted a woman in a different outfit but with a similar appearance using the card. Id. A store employee told the police that the woman had been accompanied by a dark-skinned black male, estimated to be in his mid-to-late thirties.

---

[1] This Court relies upon the factual background set forth by the Appeals Court. 28 U.S.C. § 2254(e)(1); see also Moore v. Dickhaut, 842 F.3d 97, 100 (1st Cir. 2016).

[3]

On February 7, 2012, the Brookline police responded to a breaking and entering in Cambridge, where a driver's license for Jenell Johnson ("Johnson") was found. Id. The victim said that she did not know Johnson. Id. Using information from Johnson's driver's license, the police found booking photographs from a 2011 breaking and entering. Id. at 290-91. The 2011 incident had resulted in the arrests of Johnson and Washington. Id. at 291. The police determined that Johnson and Washington's 2011 booking photographs corresponded with the appearance of the suspects in the surveillance footage. Id. An employee from one of the retail stores was given a photo array and identified Johnson and Washington as the customers making fraudulent purchases. Id.

The police reported to Johnson and Washington's residence on February 9, 2012, stating that they had warrants for the two suspects' arrests. Id. Johnson answered the door, was taken into custody, and advised of her Miranda rights. Id. At the officers' request, Johnson directed the police to a bedroom with items allegedly purchased with the stolen credit card. Id. The officers observed items matching the description of fraudulently purchased merchandise and stolen goods in plain view. Id. The officers asked Johnson for her consent to search the apartment. Id. Johnson refused, stating that it was not her home and any

items inside might not belong to her. Id. The officers apprehended Washington in a third floor bathroom. Id.

Johnson and Washington were arrested and taken to police headquarters while officers remained at the home to secure the premises and await a search warrant. Id. While there, the police spoke with the homeowner, who identified himself as Johnson's stepfather. Id. He told the officers that Washington had stayed at the residence for the past five or six weeks. Johnson's stepfather also noted that he had discovered a bag in a trash can outside of the house with silverware, jewelry bags, and a prescription bottle with the name of one of the breaking and entering victims. Id.

## II. ANALYSIS

### A. Legal Standard

Federal district courts review habeas claims through the deferential lens of 28 U.S.C. section 2254. Tran v. Roden, 847 F.3d 44, 48 (1st Cir. 2017). This allows a court to grant habeas relief when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. (quoting 28 U.S.C. § 2254(d)(1)). An unreasonable application occurs "if the state court applies th[e Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton,

544 U.S. 133, 141 (2005) (citations omitted); see also Early v. Packer, 537 U.S. 3, 11 (2002) ("[D]ecisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but an <u>unreasonable</u> application of clearly established federal law . . . ." (citation omitted)).

**B. Opportunity for Full and Fair Litigation**

Stone v. Powell, 428 U.S. 465 (1976), expressed a policy against exclusionary rule-based collateral review of state convictions. See Riley v. Gray, 674 F.2d 522, 526 (6th Cir. 1982) ("[T]he special deterrent value of the exclusionary rule is at its nadir [on collateral review] and should not be applied"); see also Fasano v. Hall, 615 F.2d 555, 559 (1st Cir. 1980) (applying Stone's deterrence rationale to deny habeas relief based on violation of federal statute). In Stone, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 482 (1976). In fact, where a petitioner's Fourth Amendment claim has been fully and fairly litigated, federal habeas courts have "no authority to review the state record and grant the writ simply because [they]

[6]

disagree with the result reached by the state courts." Pignone v. Sands, 589 F.2d 76, 80 (1st Cir. 1978).

The First Circuit has interpreted Stone's "full and fair opportunity" to litigate as requiring a state to "ma[k]e available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations." Sanna v. Dipaolo, 265 F.3d 1, 8-9 (1st Cir. 2001). Such procedures have been met where the defendant had an evidentiary hearing, coupled with the trial judge's written opinion and a Supreme Judicial Court appeal, id. at 8, and where there was an adjudication by a trial judge, followed by the Supreme Judicial Court's review, see Cavitt v. Saba, 57 F. Supp. 3d 81, 91 (D. Mass. 2014); see also Hernandez v. Massachusetts, No. 16-10953-DPW, 2017 WL 239330, at *3 (D. Mass. Jan. 19, 2017) (Woodlock, J.) (declining to reach Fourth Amendment claim in light of similar state court procedures).

Medeiros emphasizes that Pearson's evidentiary challenge had a hearing in state court, a determination by the motion judge, and a direct appeal to the Appeals Court, which affirmed the decision. Resp't's Mem. 4. In addition, although denied, Pearson filed for leave to obtain further appellate review in the Massachusetts Supreme Judicial Court. Under the governing case law, such procedures are more than enough to satisfy Stone's full and fair litigation requirement.

Pearson, however, does not challenge the adequacy of these procedures. Instead, he argues that Stone leaves room for an exception where, as here, the state court "deprives" a defendant of a full and fair opportunity to litigate his Fourth Amendment claim "by looking at the wrong body of law." Pet'r's Mem. 8. In support of this argument, Pearson unsuccessfully relies on three out-of-circuit authorities.

First, Pearson cites Miranda v. Leibach, 394 F.3d 984, 997 (7th Cir. 2005), arguing that it holds that a "petitioner only has [a] full and fair opportunity to litigate Fourth Amendment claim if state court applies 'the proper constitutional case law' to the facts." Pet'r's Mem. 15 (emphasis added). This characterization, however, is misleading. In Leibach, application of the proper constitutional case law was just one of three sufficient conditions for full and fair litigation the Seventh Circuit identified. 394 F.3d at 997. The court also noted that the petitioner "apprised the state court of his Fourth Amendment claim" and "the state court carefully and thoroughly analyzed the facts." Id.

Second, Pearson argues that Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978), posits that opportunity for full and fair litigation "contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." Pet'r's Mem. 15 (quoting Gamble, 583

[8]

F.2d at 1165). This reading is problematic for two reasons. First, while the state court in Gamble blatantly disregarded a clear Supreme Court precedent, see Gamble, 583 F.2d at 1164, the Appeals Court here declined to apply a subjective intent standard only after careful consideration of Murray v. United States, 487 U.S. 533 (1988), and its progeny. Second, a number of courts have explicitly declined to follow Gamble's approach of inquiring into the merits of a state court's application of Fourth Amendment principles. See, e.g., Riley, 674 F.2d at 526 (rejecting case-by-case review as "inconsistent with Stone's assumption that state courts are as capable of deciding fourth amendment issues as federal courts").

Finally, Pearson quotes Hampton v. Wyant, 296 F.3d 560, 563-64 (7th Cir. 2002), for the proposition that "[f]ailure to apply applicable law would show that the accused lacked a full opportunity to prevail" and that where "state judges have closed their ears and minds to argument" relief is justified under Stone. Pet'r's Mem. 17 (citing Hampton, 296 F.3d at 563-64). In response, Medeiros argues that Hampton is not applicable here because "the Massachusetts Appeals Court did not 'close its ears and minds.'" Resp't's Mem. 6.

To the extent that these three cases provide an exception to Stone, they do so only in the extremely narrow context in which "state judges have closed their ears and minds to

argument" on the petitioner's Fourth Amendment claim. Hampton, 296 F.3d at 564. Pearson argues that federal law requires a court, in reviewing a police officer's intent to obtain a search warrant under the independent source doctrine, to evaluate the officer's intent under a subjective standard. Pet'r's Mem. 11. Pearson raised this same challenge in the state court, and the Appeals Court documented its consideration of Pearson's argument:

> [Pearson] argues that the judge erroneously omitted the first of a two-step independent source inquiry mandated by Murray v. United States, 487 U.S. 533 (1988), by failing to determine whether police officers' decision to seek the warrant was influenced by their observations in the course of the warrantless entry and arrest.
> The defendant bases his argument on the independent source analysis articulated by the United States Court of Appeals for the First Circuit (First Circuit) in United States v. Dessesaure, 429 F.3d 359 (1st Cir. 2005). Under that approach, determination of police officers' intent to seek a warrant is framed as a subjective inquiry. See id. at 369; United States v. Siciliano, 578 F.3d 61, 69 (1st Cir. 2009). Cf. United States v. Silva, 554 F.3d 13, 19 (1st Cir. 2009) (holding that, in totality of circumstances, reasonable officer would seek warrant).

Pearson, 90 Mass. App. Ct. at 291-92. The Appeals Court then explicitly considered and rejected the argument:

> Although the First Circuit frames the first Murray prong as a subjective test ("would these particular police officers have sought the warrant?"), it instructs Federal District Courts to ascertain officers' subjective intent by objective means, based on the totality of attendant circumstances. United States v. Dessesaure, 429 F.3d at 369. Since Murray, the United States Supreme Court has eschewed the use of subjective intent in the context of the Fourth Amendment to the United States Constitution. See Whren v. United States, 517 U.S. 806, 812-816 (1996);

> Devenpeck v. Alford, 543 U.S. 146 (2004). The First
> Circuit "did not reach this question in Dessesaure because
> it was unnecessary for the resolution of the case. We
> again decline to reach the question, though for a different
> reason. The Supreme Court has repeatedly instructed lower
> courts that only it has the prerogative to overrule its own
> decisions." United States v. Siciliano, 578 F.3d 61, 69
> n.5 (1st Cir. 2009).

Pearson, 90 Mass. App. Ct. at 292 n.5.

On this record, it is clear that the state courts did not close their ears and minds to Pearson's claims. By arguing his Fourth Amendment claim in state court and receiving due consideration, Pearson had the opportunity for full and fair litigation. In addition, Pearson's liberal interpretations of Leibach, Hampton, and Gamble fail to convince this Court that habeas relief is available if a state court applied the wrong body of constitutional law. Accordingly, Pearson is not entitled to habeas relief based on his Fourth Amendment claim.

## III. CONCLUSION

Because Pearson was afforded the opportunity to litigate his claim fully and fairly in the state courts, this Court GRANTS Medeiros's motion to dismiss, ECF No. 17.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE